PER CURIAM.
 

 |, This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, David M. Newell, an attorney licensed to practice law in Louisiana.
 

 UNDERLYING FACTS
 

 Count I
 

 In April 2002, Emily Jones, a resident of California, retained respondent to handle the succession of her aunt, Emily More-land, a resident of Claiborne Parish, Louisiana. Subsequently, the representation was expanded to encompass the successions of five other family members. As of September 2002, Ms. Jones paid respondent a total of $2,800 to handle these matters. Thereafter, respondent failed to properly communicate with Ms. Jones and failed to respond to her requests for information concerning the status of the cases. He also failed to move the succession matters forward.
 

 In January 2003, Ms. Jones filed a complaint against respondent with the ODC. In response, respondent committed to Ms. Jones that he would have the succession matters completed by March 15, 2003. However, he failed to do so. In April 2003, Ms. Jones terminated respondent’s representation and requested a refund of the legal fees she had paid. By May 2003, respondent had not refunded any portion of the fees, |anor had he completed the succession work. Ms. Jones then filed a claim against respondent with the local justice of the peace. Subsequently, respondent met with Ms. Jones and they agreed he would continue with the representation. Respondent agreed to complete the matter by the fall of 2003 and further agreed to prepare, at no charge, four deeds transferring the succession property-
 

 Despite Ms. Jones’s willingness to continue working with respondent, she continued to experience difficulty communicating with him, and he did not complete all of the succession matters he was retained to handle. In October 2005, in response to Ms. Jones’s continued requests for assistance in resolving the successions, respondent advised Ms. Jones that he was withdrawing from representing her.
 

 The ODC alleged respondent violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), and 1.16(d) (obligations upon termination of the representation) of the Rules of Professional Conduct.
 

 Count II
 

 Respondent represented Brandy McKnight in a personal injury claim against USAgencies Casualty Insurance Company (“USAgencies”) and its insured. During the course of the representation, Ms. McKnight received physical therapy from Janet Hoppe (now McKneely) of Physical Therapy Associates, Inc. Ms. Hoppe agreed to defer payment for her services until the case settled, and she put USAgencies on notice of her lien in the McKnight matter.
 

 In July 2003, USAgencies tendered its policy limits of $10,000 in settlement of Ms. McKnight’s claim. At the time of the settlement, Ms. McKnight’s outstanding balance with Physical Therapy Associates was $3,630. The settlement draft was |smade payable to respondent, Ms. McKnight, Physical Therapy Associates, and Ms. McKnight’s insurer, State Farm Insurance Company, which had a medical payments subrogation lien on her personal injury claim. Respondent obtained the necessary endorsements and on November 10, 2003,
 
 *1196
 
 he deposited the settlement check into his client trust account at Regions Bank. Ms. McKnight did not sign the settlement release at this time, however.
 

 On November 14, 2003, respondent withdrew Ms. McKnight’s settlement funds from his Regions Bank trust account and deposited the funds into his client trust account at First Guaranty Bank.
 
 [1]
 
 Subsequent to the transfer of the funds to First Guaranty Bank, Ms. McKnight rejected the settlement offer from USAgencies, apparently because State Farm had not yet agreed to release its subrogation lien. Respondent did not promptly refund the settlement funds to USAgencies, nor did he pay Physical Therapy Associates the sums owed by Ms. McKnight. Moreover, the balance of respondent’s client trust account at First Guaranty Bank fell below $10,000 between November 20, 2003 and December 1, 2003, a period of eleven days.
 

 In February 2004, Ms. Hoppe filed a complaint against respondent with the ODC. State Farm ultimately paid Ms. McKnight’s balance to Physical Therapy Associates pursuant to her medical payments coverage; Ms. Hoppe received these funds in May 2004. In May 2005, Ms. McKnight’s claim against USAgencies was dismissed, and in January 2006, her claim against State Farm was dismissed.
 

 The ODC alleged that if Ms. McKnight had already accepted the USAgencies settlement when she endorsed the settlement draft, then respondent violated Rules 1.15(b) (failure to promptly deliver funds owed to a client or third person) and 8.4(c) |/engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct by failing to promptly deliver to Ms. Hoppe funds owed to Physical Therapy Services. Alternatively, the ODC alleged that if Ms. McKnight properly rejected the USAgen-cies settlement, then respondent was without authority to negotiate the settlement draft and he should have refunded the settlement proceeds to USAgencies. By failing to do so, respondent violated Rules 1.2 (scope of the representation), 8.4(c), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct. The ODC further alleged that respondent violated Rule 8.4(c) by his mishandling and short-term conversion of the proceeds of the USAgencies settlement.
 

 Count III
 

 While investigating the complaint filed by Ms. Hoppe, subject of Count II,
 
 supra,
 
 the ODC reviewed the records of respondent’s client trust account with Regions Bank. Although respondent contends he converted this account to an office operating account in 2002 and thereafter made the First Guaranty Bank account his “primary” client trust account, respondent’s checks and bank records for the period of October 1, 2003 to March 31, 2004 indicate that the Regions account remained designated as a client trust account. Notwithstanding this fact, respondent used the account to make personal and/or business payments. Furthermore, from November 10, 2003 to November 17, 2003, respondent commingled Ms. McKnight’s settlement proceeds with his personal and/or business funds in the Regions Bank account.
 
 [2]
 

 
 *1197
 
 |sThe ODC alleged that respondent commingled client and third-party funds with his personal funds, in violation of Rule 1.15(a) (a lawyer shall hold property of clients or third persons that is in a lawyer’s possession in connection with a representation separate from the lawyer’s own property) of the Rules of Professional Conduct. The ODC further alleged that respondent violated Rule 8.4(c) by misrepresenting his Regions Bank account as a client trust account when in fact he used the account as a business operating account.
 

 Count IV
 

 While investigating the complaint filed by Ms. Hoppe, subject of Count II,
 
 supra,
 
 the ODC reviewed the records of respondent’s client trust account with First Guaranty Bank. Between 2004 and 2006, respondent commingled his personal funds with client and third-party funds in the account, and used the account to make personal payments.
 

 The ODC alleged respondent violated Rule 1.15(a) of the Rules of Professional Conduct.
 

 Count V
 

 In January 2004, Willie Crew, Sr. was killed in an automobile accident. Mr. Crew, Sr.’s wife and one daughter predeceased him. He was survived by a son, Willie Crew, Jr., and a daughter, Betty Draper. Mr. Crew, Sr. was also survived by a granddaughter, Vivian Jones, who was the child of his late daughter.
 

 In December 2004, respondent agreed with Vivian Jones to represent her and her uncle, Willie Crew, Jr., in a wrongful death and survival action against State Farm Insurance Company and its insured. Under La. Civ.Code arts. 2315.1 and 2315.2, the existence of surviving children of the decedent excluded all other persons from |fibringing a wrongful death or survival action arising out of the decedent’s death.
 
 [3]
 
 Nevertheless, in January 2005, respondent filed a petition for damages against State Farm on behalf of Ms. Jones and Mr. Crew, Jr.
 
 Vivian Jones, Willie Crew, Jr., and the Estate of Willie Crew, Sr. v. State Farm, et al,
 
 No. 36565 on the docket of the 2nd Judicial District Court for the Parish of Claiborne. In February 2005, defendants filed an answer to the petition alleging that Ms. Jones did not have a cause of action to recover damages for the death of her grandfather.
 

 Meanwhile, at the same time, Willie Crew, Sr.’s other surviving child, Betty Draper, had filed a wrongful death and survival action in the matter of
 
 Betty Marie Draper v. Robert L. Ferguson and State Farm Mutual Automobile Insurance Co.,
 
 No. 36563 on the docket of the 2nd JDC. Ms. Draper was represented in the matter by attorney Rick Warren. In April 2005, Ms. Draper’s suit was consolidated with the suit filed by respondent on behalf of Ms. Jones and Willie Crew, Jr.
 

 In March 2005, counsel for State Farm wrote to respondent and Mr. Warren to advise that the insurer would like to settle the claims by tendering policy limits of $25,000. However, with regard to the claim of Ms. Jones, counsel again pointed out that Mr. Crew, Jr. and Ms. Draper, “as the sole surviving children of the deceased, are the only persons entitled to recover under [La. Civ.Code art. 2315.2].”
 

 
 *1198
 
 Upon receiving this correspondence, respondent wrote to Mr. Crew, Jr. and Ms. Jones and indicated that State Farm was ready to settle the case. However, because Ms. Jones was not a proper party plaintiff under the Civil Code, respondent informed his clients that State Farm had delayed the settlement “until we assure them that this |7is not an issue.” Respondent therefore requested that his clients agree to share the settlement funds equally. In response, Mr. Crew, Jr. instructed respondent in writing to “omit my niece Vivian Jones because she is not a surviving child under Art. 2S15.1.A(1).” Mr. Crew, Jr. also requested a copy of his file. Respondent failed to comply with his client’s requests.
 

 In May 2005, State Farm’s counsel sent respondent a check in the amount of $12,500, representing half of the insurer’s policy limits.
 
 [4]
 
 The check was made payable to Willie Crew, Jr. and respondent. The cover letter accompanying the check made reference to the agreement of all counsel that Ms. Jones “was a grandchild at the time of the accident and is not a proper party claimant and will therefore not share in the settlement.”
 

 Within days of the issuance of the settlement cheek, Ms. Jones wrote to respondent to object to Ms. Draper’s participation in the settlement. Ms. Jones subsequently executed a notarized statement expressing her desire to have respondent continue to represent her in the wrongful death and survival action. Despite the ongoing conflict of interest between Ms. Jones and Mr. Crew, Jr., respondent continued to represent both parties. In September 2006, respondent finalized the settlement with State Farm and disbursed $8,100 to Mr. Crew, Jr. In October 2006, the trial court signed an order dismissing
 
 Jones, et al. v. State Farm, et al
 
 with prejudice as to plaintiffs Vivian Jones and Willie Crew, Jr.
 

 The ODC alleged respondent violated Rules 1.4, 1.7 (conflict of interest), 3.1 (meritorious claims and contentions), and 8.4(d) of the Rules of Professional Conduct. The ODC further alleged that respondent engaged in an improper business transaction with Willie Crew, Jr., in violation of Rule 1.8. This alleged violation | ^stemmed from respondent’s referral of Mr. Crew, Jr. to Alpine Finance, LLC, a finance company owned by respondent and his children, in response to Mr. Crew, Jr.’s requests for cash advances.
 
 [5]
 

 Count VI
 

 In March 2005, Merry Jona Wallace paid respondent $500 to handle a bankruptcy matter. Thereafter, respondent failed to communicate with Ms. Wallace regarding the status of her case, despite her telephone calls and messages. By November 2005, when respondent still had not filed Ms. Wallace’s bankruptcy petition, she requested in writing that he refund the fee. Respondent failed to comply with Ms. Wallace’s request. In February 2006, Ms. Wallace delivered a letter to respondent’s office terminating his representation and again requesting a refund of the fee she paid. As of the date of the filing of the formal charges in 2009, respondent had not refunded any sums to Ms. Wallace.
 

 The ODC alleged respondent violated Rules 1.3,1.4,1.5(f)(5) (failure tó refund an unearned fee), and 1.16(d) of the Rules of Professional Conduct.
 

 
 *1199
 

 Count VII
 

 In 2003, Wilma Holcomb retained respondent to represent her in a legal matter in which she sought to obtain funds from the succession of her deceased ex-husband. The funds at issue had been held in the registry of the court pending a determination as to the rightful owners of the funds. Respondent agreed to handle the matter for a flat fee of $5,000, plus $500 in court costs. Ms. Holcomb paid respondent $5,500 in June 2008.
 

 loin July 2005, respondent obtained an order from the trial court permitting him to withdraw from the representation of Ms. Holcomb. At that time, respondent had done some work in the matter, but Ms. Holcomb had not obtained any of the funds held in the registry of the court, nor had there been a ruling as to the rightful owners of the funds. Nevertheless, respondent failed to refund any portion of the fee paid to him by Ms. Holcomb.
 

 The ODC alleged respondent violated Rule 1.16(d) of the Rules of Professional Conduct.
 

 DISCIPLINARY PROCEEDINGS
 

 In April 2009, the ODC filed seven counts of formal charges against respondent, as set forth above. Respondent answered the formal charges and denied any misconduct. The matter then proceeded to a formal hearing on the merits.
 

 Hearing Committee Report
 

 After consideration of the consolidated charges, the hearing committee made the following findings based upon the evidence and testimony at the hearing:
 

 Count I:
 

 1.In or around April of 2002, Ms. Jones hired respondent on a flat fee basis to handle the Succession of Emily More-land.
 

 2. Subsequently, the representation expanded to related successions and deeds.
 

 3. Respondent was paid a flat fee of $2,800 to handle these matters.
 

 4. Ms. Jones paid respondent the entire fee on September 12, 2002.
 

 5. Respondent failed to communicate with Ms. Jones concerning the matters from September 2002 through January 2003.
 

 |in6. In January 2003, Ms. Jones filed an ethics complaint against respondent. In response to the ethics complaint, respondent committed to have the work completed by March 15, 2003.
 

 7. When the work was not completed as promised, respondent was terminated by Ms. Jones in April, but respondent refused to refund any of the fee.
 

 8. Ms. Jones filed suit against respondent with the local justice of the peace, in an effort to secure a refund.
 

 9. In compromise of the justice of the peace suit, in June 2003, respondent promised to complete the successions and related property transfers by November of that same year.
 

 10. The successions and related property transfers were not filed until early 2004, and were never forwarded to the Tax Assessor’s Office.
 

 11. When Ms. Jones complained that the Tax Assessor’s Office did not have notice of the transfers of property, respondent failed to take any action to correct the error.
 

 12. Respondent admitted that he was aware that the Tax Assessor needed to be made aware of the transfers, but took no action.
 

 13. Respondent violated Rule 1.3, requiring a lawyer to “act with reasonable diligence and promptness in representing a client,” when he failed to
 
 *1200
 
 complete the succession- and related property transfers through to ensuring that the Tax Assessor’s Office was informed of all transfers, despite providing two deadlines within which he told his client the work would be completed.
 

 14. Respondent violated Rule 1.4, requiring a lawyer to maintain reasonable communication with his client concerning the representation, during the time period of September 2003 through January 2004.
 

 |n15. Respondent violated Rule 1.16(d), re- - quiring an attorney to return any unused portion of his fees upon termination of his representation by the client, in failing to return the fee upon his termination in April 2004.
 

 Count II:
 

 1. Respondent represented Brandy McKnight in a personal injury claim.
 

 2. Respondent and [USAgencies] reached an agreement to settle for policy limits, but no agreement was reached with State Farm, which had a subrogation interest, or with respondent’s client, Ms. McKnight.
 

 3. Despite the lack of a settlement agreement, respondent had Ms. Hoppe (McKneely), a lien holder, endorse the check, but refused to pay the amount of the lien, or inform Ms. Hoppe that the settlement was not perfected.
 

 4. Respondent expressed his understanding that once the settlement was not going to go through, the money should have been returned to the insurer, but was not.
 

 5. Ms. Hoppe recovered funds owed to her through State Farm under a different provision of the policy and not from respondent.
 

 6. Respondent’s trust account balance fell below the amount necessary to cover the McKnight settlement check, when a check was written out of the trust account to pay a family business of respondent’s.
 

 7.When Ms. McKnight refused to execute the settlement documents, respondent’s options were clear: he was to refund the money to the insurer, and inform both State Farm and Ms. Hoppe of what transpired. In failing to either inform Ms. Hoppe or to pay her lien, respondent violated Rule 1.15(b), as it was in existence in 2003.
 

 | ,¾8. In failing to return the money to the insurer, respondent violated Rule 1.2, in failing to follow his client’s directions concerning the objectives of the matter. It also delayed the administration of justice in violation of Rule 8.4(d), in that the parties claiming rights to the proceeds did not have an opportunity to argue that the negotiation of the check constituted a perfected settlement.
 

 9. The trust account issue raised in this count appears to have been caused by respondent’s failure to properly monitor his trust account or train and supervise individuals delegated with authority, but did not rise to the level of a violation of Rule 8.4(c), as there was no evidence of the intent to act with “dishonesty, fraud, deceit, or misrepresentation.”
 

 Count III:
 

 1. Respondent failed to properly change the designation of the Regions Bank account from a trust account to an operating account.
 

 2. Respondent admitted that he was aware that he was not to commingle client funds with his personal or business funds when the McKnight settlement check was incorrectly de
 
 *1201
 
 posited into the Regions Bank account.
 

 3. Respondent violated Rule 1.15(a) when he deposited the McKnight settlement check into his Regions Bank account. This error was caused by his failure to properly designate the account as an operating account.
 

 4. There was insufficient evidence to establish that respondent violated Rule 8.4(c), as there was no evidence of intent of “dishonesty, fraud, deceit, or misrepresentation.”
 

 Count IV:
 

 1.Respondent expressed awareness of the duties he owed under Rule 1.15, concerning the safekeeping of property.
 

 11S2. Despite this awareness, respondent routinely allowed his trust account to be used for business and personal interests unrelated to his legal practice.
 

 3. Respondent failed to instruct and monitor employees and staff on the proper use of the trust accounts.
 

 4. Respondent violated Rule 1.15 in numerous instances by commingling personal funds in his trust account. The committee concludes that the pattern of behavior in using the trust account in this manner makes the risk of conversion great.
 

 Count V:
 

 1. On or about January 16, 2004, Willie Crew, Sr. died in an automobile accident.
 

 2. Mr. Crew, Sr. was preceded in death by his wife and one child (the mother of Vivian Jones) and survived by two children, Willie Crew, Jr. and Betty Draper.
 

 3. La. Civ.Code arts. 2315.1 and 2315.2 exclude, by omission, grandchildren from being parties to a survival or wrongful death action.
 

 4. In December 2004, respondent agreed with Vivian Jones, grandchild of the decedent, to represent both her and her uncle Willie Crew, Jr. in a survival and wrongful death action.
 

 5. Prior to filing suit, respondent did not speak to Willie Crew, Jr.
 

 6. On January 18, 2005, respondent filed a petition representing the Estate of Willie Crew, Sr., Vivian Jones, and Willie Crew, Jr.
 

 7. On February 10, 2005, respondent was made aware in an answer filed by State Farm that Vivian Jones did not have a cause of action in this matter.
 

 8. On March 3, 2005, respondent was informed by State Farm’s attorney via correspondence that Vivian Jones could not recover.
 

 |¼9. On April 11, 2005, respondent sought an agreement from Ms. Jones and Mr. Crew, Jr. to split the settlement proceeds.
 

 10. On April 20, 2005, Mr. Crew, Jr. requested respondent send him a copy of the insurance policy and lawsuit, but respondent never responded.
 

 11. On May 5, 2005, [counsel for State Farm] wrote a letter confirming that respondent and Rick Warren (who represented [Ms. Draper]), had agreed that Ms. Jones would not recover in the settlement.
 

 12. On May 9, [2005], Ms. Jones wrote to respondent objecting to Ms. Draper’s participation in the settlement.
 

 13. On October 31, 2005, Ms. Jones indicated in a statement that she wanted respondent to continue to represent her in the litigation.
 

 14. Despite the ongoing conflict of interest between Mr. Crew, Jr. and Ms.
 
 *1202
 
 Jones, respondent continued to represent both parties.
 

 15. Respondent arranged a loan with a family-owned finance company for Mr. Crew, Jr.
 

 16. Respondent engaged in an ongoing prohibited conflict of interest by representing Mr. Crew, Jr. and Ms. Jones in the personal injury action in violation of Rule 1.7.
 

 17. Respondent knowingly filed a wrongful death and survival claim on behalf of Ms. Jones, even though she was an excluded party, thereby delaying the resolution of the matter in violation of Rules 3.1 and 8.4(d).
 

 18. Respondent failed to properly and timely communicate with his clients regarding their true interests and the status of the representation, and failed to respond to Mr. Crew, Jr.’s requests for documents and information in violation of Rule 1.4.
 

 11B19. The financial transaction with Alpine Finance and Mr. Crew, Jr. was likewise a violation of Rule 1.8, in that there was no disclosure to the client of respondent’s interest in Alpine Finance, which he clearly had
 
 de facto
 
 control of.
 

 Count VI:
 

 1. Respondent was hired by Ms. Wallace to file a Chapter 7 bankruptcy on her behalf for a flat fee of $500, inclusive of filing fees.
 

 2. Respondent advised Ms. Wallace that, in his judgment, she did not need to file bankruptcy, and he would not file one on her behalf.
 

 3. Respondent failed to either comply with Ms. Wallace’s request to file bankruptcy or refund her fee when he refused to file the pleadings.
 

 4. Respondent violated Rule 1.3, in failing to act with reasonable diligence and promptness in representing Ms. Wallace in filing her requested bankruptcy petition.
 

 5. Respondent violated Rule 1.4 in failing to promptly communicate with Ms. Wallace that he did not intend to file the petition she requested.
 

 6. Respondent violated Rule 1.5(f)(5) and 1.16(d) in failing to refund the unearned portion of the fixed fee when he did not file the bankruptcy petition and his representation was terminated.
 

 Count VII:
 

 1. Respondent agreed to represent Ms. Holcomb through a hearing to determine her right to funds held in the registry of the court.
 

 2. When Ms. Holcomb refused a settlement negotiated by respondent, he withdrew from the representation prior to participating in any hearing.
 

 3. Respondent failed to refund the unearned fee.
 

 11fi4. Respondent violated [Rule 1.16(d) ] in failing to refund the unearned fee when he did not take the matter to hearing.
 

 Based upon these findings, the committee determined respondent violated duties owed to his clients and to the legal system. The committee found respondent’s conduct was negligent, knowing, and intentional, and caused both actual and potential harm. The applicable baseline sanction in this matter is suspension.
 

 The committee found the following aggravating factors are present: a dishonest or selfish motive (in Counts I, VI, and VII), a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims (in Counts I and V), substantial experience in the practice of law (admitted 1983), and indifference to making restitution (in Counts I, VI, and VII). In mitigation, the committee recognized the follow
 
 *1203
 
 ing factors: absence of a prior disciplinary record and personal and emotional problems.
 

 Considering the foregoing findings and the prior jurisprudence of this court, the committee recommended respondent be suspended from the practice of law for one year and one day. The committee further recommended that respondent be ordered to make restitution of the unearned fees owed to his clients in Counts I, VI, and VII, and that he be required to attend the Ethics School and Trust Accounting School offered by the Practice Assistance and Improvement Committee of the Louisiana State Bar Association (LSBA).
 

 Both respondent and the ODC objected to the hearing committee’s report. Respondent asserted that the committee erred in finding the ODC sustained its burden of proof with respect to the alleged violations in Counts I, II, V, VI, and VII. Regarding his “technical violations of the handling of the trust account” in Counts III and IV, respondent pointed out that no actual harm resulted to any client or third party |17as a result of his conduct, and therefore the appropriate discipline in this matter is a “private reprimand.” For its part, the ODC objected to the committee’s determination that respondent did not violate Rule 8.4(c) as charged in Counts II and III. The ODC also objected to the committee’s failure to find as an aggravating factor that respondent made false statements or engaged in other deceptive practices during the disciplinary process.
 
 [6]
 
 Finally, the ODC maintained that the sanction recommended by the committee is too lenient.
 

 Disciplinary Board Recommendation
 

 After reviewing the record of this matter, the disciplinary board found the hearing committee’s factual findings are supported by the record and are not manifestly erroneous. The board also agreed with the committee’s determinations regarding the alleged violations of the Rules of Professional Conduct, except that in Count II, the board found sufficient evidence that respondent violated Rule 8.4(c) by failing to notify USAgen-cies of Ms. McKnight’s decision to reject the settlement.
 
 [7]
 
 The board also found in Count II that the record supports an independent finding of respondent’s violation of Rule 5.3(a) (responsibilities regarding nonlawyer assistants), which was not charged in the formal charges but which the board characterized as “a lesser included offense.”
 

 The board determined respondent violated duties owed to his clients and to the legal system. The board found respondent’s conduct was negligent, knowing, and intentional, and caused both actual and potential harm. Relying on the ABA’s
 
 11SStandards for Imposing Lawyer Sanctions,
 
 the board determined the applicable baseline sanction in this matter is suspension.
 

 The board agreed with the aggravating and mitigating factors identified by the committee. In addition, the board agreed with the ODC that respondent made false statements or engaged in other deceptive practices during the disciplinary process by falsely characterizing the extent of another attorney’s involvement in the Crew matter.
 
 [8]
 
 The board also noted respon
 
 *1204
 
 dent’s “lack of remorse,” which is not an aggravating factor specifically recognized by the ABA Standards.
 

 Considering the foregoing findings, the prior jurisprudence of this court, and the sanction recommended by the committee, the board recommended respondent be suspended from the practice of law for one year and one day. The board further recommended that respondent be ordered to make restitution of the unearned fees owed to his clients in Counts I, VI, and VII.
 
 [9]
 

 Respondent filed an objection to the disciplinary board’s report and recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
 

 DISCUSSION
 

 Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence.
 
 In re: Banks,
 
 09-1212 (La.10/2/09), 1918 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings.
 
 See In re: Caulfield,
 
 96-1401 (La.11/25/96), 683 So.2d 714;
 
 In re: Pardue,
 
 93-2865 (La.3/11/94), 633 So.2d 150.
 

 The hearing committee made numerous and specific factual findings in its thorough report to lend support to its determination that respondent failed to communicate with clients, neglected legal matters, failed to refund unearned fees, engaged in conduct constituting a conflict of interest, commingled and converted client and third-party funds, and engaged in conduct prejudicial to the administration of justice. These findings are supported by the record of this matter.
 

 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct.
 
 Louisiana State Bar Ass’n v. Reis,
 
 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances.
 
 Louisiana State Bar Ass’n v. Whittington,
 
 459 So.2d 520 (La.1984).
 

 The record supports a finding that respondent’s conduct was negligent, knowing, and intentional, and caused both actual and potential harm. The applicable baseline sanction is a period of suspension.
 

 The ODC does not contest that two mitigating factors are present: absence of a prior disciplinary record and personal and emotional problems. In aggravation, the 120following factors are present: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, vulnerability of the victims, substantial experience in the practice of law, and indifference to making restitution.
 

 
 *1205
 
 We agree that the one year and one day suspension recommended by both the committee and the board falls squarely within the range of sanctions imposed by this court in prior cases involving similar misconduct. In light of the mitigating factors present in this case, we will defer all but six months of the suspension, subject to respondent’s successful completion of a two-year period of supervised probation governed by the following conditions: (1) Respondent shall successfully complete the LSBA’s Ethics School and Trust Accounting School; (2) Respondent’s trust account will be audited semi-annually for a period of two years, for a total of four audits. The audits will be conducted by a certified public accountant selected or approved by the ODC, with the cost and expense of the audits to be paid by respondent; and (3) Respondent shall make restitution to Emily Jones, Merry Jona Wallace, and Wilma Holcomb for any unearned fees. We caution respondent that any violation of the conditions of probation, or any other misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate.
 

 DECREE
 

 Upon review of the findings and recommendations of the hearing committees and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that David M. Newell, Louisiana Bar Roll number 1107, be and he hereby is suspended from the practice of law for one year and one day. It is further ordered that all but six months of the suspension shall be deferred. Following the active portion 12i of the suspension, respondent shall be placed on supervised probation for two years governed by the conditions set forth in this opinion. Any misconduct by respondent during the probationary period may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
 

 [1]
 

 . Respondent later explained that he did so because the funds had been mistakenly deposited into the Regions Bank trust account, which is "dedicated to business matters,” while the First Guaranty Bank trust account is "for other matters including personal injury matters.”
 

 [2]
 

 . As previously noted, respondent withdrew Ms. McKnight’s settlement funds from his Regions Bank trust account and deposited the funds into his client trust account at First Guaranty Bank on November 14, 2003. However, the check did not clear the Regions Bank account until November 17, 2003.
 

 [3]
 

 . It is well settled that grandchildren are excluded from the first class of beneficiaries under La. Civ.Code arts. 2315.1 and 2315.2, even where the grandchild may be classified as an heir in the grandparent’s succession through representation of a parent who predeceased the grandparent.
 
 See Hunt v. New Orleans Ry. & Light Co.,
 
 140 La. 524, 73 So. 667 (1916);
 
 Chatman v. Martin,
 
 245 So.2d 423 (La.App. 2nd Cir.1971); and
 
 Viau v. Batiste,
 
 332 So.2d 512 (La.App. 4th Cir.),
 
 writ denied,
 
 337 So.2d 531 (La.1976).
 

 [4]
 

 . Ms. Draper also settled her claim with State Farm, and her suit was subsequently dismissed with prejudice.
 

 [5]
 

 . The advances were repaid from Mr. Crew, Jr.’s portion of the State Farm settlement, The amount owed to Alpine Finance at that time was $3,391.61.
 

 [6]
 

 . Specifically, the ODC contended that respondent attempted to pressure two of his clients into withdrawing their complaints against him, and falsely claimed that another attorney was responsible for the Crew matter “from day one,” despite evidence to the contrary.
 

 [7]
 

 . The board did not agree with the ODC that respondent had also violated Rule 8.4(c) in connection with Count III.
 

 [8]
 

 . The board did not agree with the ODC's argument that respondent had attempted to
 
 *1204
 
 pressure two of his clients into withdrawing their complaints against him.
 

 [9]
 

 . The board declined to adopt the recommendation that respondent be required to attend the LSBA’s Ethics School and Trust Accounting School, noting that such conditions should be addressed if and when respondent applies for reinstatement to the practice of law.